UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Jane Vece,<br>    *Plaintiff,*<br><br>    *v.*<br><br>Anthony D. DeMaio,<br>    *Defendant.* | Civil No. 3:08cv1838 (JBA)<br><br><br><br>August 30, 2010 |

RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Jane Vece alleges a Fourth Amendment violation pursuant to 42 U.S.C. § 1983, arising out of Defendant's warrantless entry and subsequent search of her home on September 4, 2008. Defendant Anthony DeMaio, a Police Sergeant for the Town of Wallingford, sued in his individual capacity, moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), which is granted in part and denied in part for the reasons that follow.

I.    Facts

Plaintiff Jane Vece was not at home during the incident giving rise to her lawsuit against Sergeant DeMaio. (*See* Vece Dep., Ex. A to Def.'s Loc Rule 56(a)1 Stmt. [Doc # 26], at 36:12–17.) Her 25 year old son, Jonathan Vece ("Jonathan"), lives with her in a condominium (*see id.* at 11:18–20) in Wallingford, Connecticut (*id.* at 5:24–25, 7:7–8).

On August 21, 2008, Plaintiff's son was scheduled for a state court proceeding on a number of charges, including Improper Use of Marker, Illegal Operation of a Motor Vehicle without Minimum Insurance, Issuing Bad Checks, Larceny Third Degree, Larceny Fourth Degree, and Larceny Sixth Degree. (*Id.* at 15:25–16:6, 18:11–17, 19:11–19, 19:11–19, 21:14–21, 22:11–16; *see also* Paperless Re-Arrest Warrant Network Notification Systems

("PRAWN") Re-Arrest Warrant Detail, Ex.s B–F to Pl.'s Local Rule 56(a)1 Stmt. [Doc # 27].) Prior to his court date, Jonathan asked his attorney, Steven Walsh, to change his court date to September 17, 2008. (*See* Vece Dep. at 23:17–24:2, 25:3–6.) Believing the proceedings to have been rescheduled, Jonathan did not appear on August 21, 2008 (Vece Dep. at 34:9–12).

Despite Attorney Walsh's request, however, the court clerk had mistakenly failed to change Jonathan's court date. (*Id.* at 24:4–5.) After Jonathan did not appear, the Superior Court issued one felony warrant for failure to appear in the first degree in violation of Conn. Gen. Stat. § 53a-172 (*see* PRAWN Re-Arrest Warrant Detail, Ex. D to Pl.'s Local Rule 56(a)1 Stmt.) and four PRAWN warrants for failure to appear in the second degree in violation of Conn. Gen. Stat. § 53-173 (*see id.*, Ex. B, C, E, and F). On or about September 4, 2008, the Wallingford police notified Jonathan that the PRAWN warrants had issued. (Vece Dep. at 27:18–22.) After learning this, Jonathan contacted Attorney Walsh, who in turn contacted the Superior Court Clerk's office. (*Id.* at 28:1–6.) The Clerk's office informed Attorney Walsh that "it was their error because they saw the note to move it to September . . . and the Clerk's office said [it would] vacate the warrants." (*See* Vece Dep. at 29:9–18.) The same day, Jonathan phoned the Wallingford Police Department, and he was informed that the warrants had been vacated. (Vece Dep. at Pl.'s Opp'n at 31:7–13.) In his deposition, Jonathan states that "according to the Wallingford Police Department . . . the system indicated that the warrants had been vacated" at 12:30 p.m. (*Id.* at 32:3–7.)

On September 4, 2008, at approximately 4:00 p.m., Sergeant DeMaio, with Officers Fuller and DeBaise, left the Wallingford Police Department as part of his regularly assigned duties as a member of the Community Policing Unit. (DeMaio Aff., Ex. G to Def.'s Local Rule 56(a)1 Stmt. at 1 ¶ 6.) Defendant DeMaio avers that prior to leaving the station, he

checked the PRAWN system "to verify the existence of warrants for the arrest of Jonathan Vece." (*Id.* at ¶ 7.) Defendant contends that at 4:00 p.m., "the PRAWN system showed that the warrants for Jonathan's arrest were valid; they were not vacated." (*Id.* at ¶ 8.)

After leaving the station, Defendant went to the Brentwood Condominium complex in Wallingford "to set up surveillance on unit 112, the known home residence of Jonathan Vece, to serve one felony and four misdemeanor PRAWN warrants for his arrest." (DeMaio Aff. at ¶ 9.) At approximately 7:00 p.m., Jonathan was home with his girlfriend, Jessica Horvath, his friend Scott Titus, and Titus's girlfriend. (Vece Dep. at 35:5–36:8.) Jonathan was watching television in the living room while his friends were on the back porch smoking cigarettes. (Vece Dep. at 36:21–37:7.)

At some point that evening, Melissa Monroe, the girlfriend of Jonathan's cousin (*id.* at 37:14–18), knocked on Plaintiff's front door to pick up a spare key from Jonathan (*id.* at 38:18–21). Jonathan contends that he let her into the home and "walked her back to the door" after getting the spare key for her. (*Id.* at 39:7–13.) Although Jonathan insists that he spoke with Monroe inside his home (Vece Dep. at 39:2–13), DeMaio avers that at 7:00 p.m., he saw Vece step outside the house, onto the front porch (DeMaio Aff. at ¶ 11).

Jonathan further states that as he was closing the front door after Monroe's departure, the door was "opened again . . . by Officer DeMaio." (Vece Dep. at 39:16-19, 39:22–25, 44:9–15.) Jonathan contends that the officers then entered Plaintiff's house without his consent. (*Id.* at 42:8–10, 45:7–10.) Jonathan also asserts that he told the officers that the warrants had been vacated after they stated their intention to place him under arrest, although the officers never placed him under arrest or put handcuffs on him. (*Id.* at 45:21–46:1, 47:7–11; *see also* DeMaio Aff. at ¶ 16.)

3

Immediately upon entry into the Vece residence, Officer DeMaio "could see straight through the condominium unit and . . . observed several people on the back deck." (DeMaio Suppl Aff. [Doc. # 35] at ¶ 9.) Based on DeMaio's training and experience, having observed people on the back porch, he "believed that [the officers'] safety was at risk because we were in an unfamiliar setting, in the presence of unidentified third parties, and, as a result, there was a threat of attack or ambush." (*Id.* at ¶ 10.) Because of the "risk of danger, [the officers] conducted a cursory inspection of spaces within the first floor of the condominium where a person may be found in order to neutralize the threat of physical harm." (*Id.* at ¶ 11.) That inspection lasted "no longer than was necessary to dispel [the officers'] suspicion of danger" (*id.* at ¶ 12) and was conducted "immediately upon entry to the residence and prior to the confirmation that the warrants had been vacated" (*id.* at ¶ 13). At some point after the officers entered his home and stated their intention to place him under arrest, Jonathan played a voice mail message from Walsh, stating that the PRAWN warrants had been vacated. (Vece Dep. at 40:13–16, 46:6–8.) As soon as the officers "confirmed that the only unidentified third parties in the unit were on the deck and that they posed a low risk of danger, [the officers] returned to the living room where [DeMaio] immediately radioed the Wallingford Police Department dispatcher and confirmed that the warrants had been vacated in the statewide computer database." (DeMaio Suppl. Aff. at ¶ 14.) "As soon as it was confirmed that the warrants had been vacated, [the officers] immediately departed the premises." (*Id.* at ¶ 15.) The parties agree that the officers were at the home for a total of approximately ten minutes. (DeMaio Aff. at ¶ 16; Vece Dep. at 51:14–18.)

II.   Discussion[1]

Plaintiff asserts that Defendant violated her Fourth Amendment rights both by entering her home without a warrant and by conducting an unlawful search once inside the home. During oral argument, Plaintiff's counsel conceded that qualified immunity applies to Defendant's entrance into Vece's house, because there is undisputed evidence that Officer DeMaio believed he was acting pursuant to a valid arrest warrant. Therefore, the only remaining issue is whether Officer DeMaio violated Plaintiff's Fourth Amendment right to be free from an unreasonable search when he conducted a protective sweep of Plaintiff's home once inside.

Plaintiff asserts that upon entering the Vece home, Defendant "walked through the entire dwelling" (Pl.'s Opp'n at 5-6), which exceeded the scope of the PRAWN arrest warrants. Defendant contends that searching the first floor was, in this instance, permissible as a "protective sweep," incident to arrest. (Def.'s Reply [Doc # 28] at 2 (citing *Maryland v. Buie*, 494 U.S. 325 (1990).) "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Buie*, 494 at 327.

Although the "police may always search closets and spaces immediately adjoining the place of arrest from which an attack could be launched," called "grab areas," they may extend

---

[1] The Court will apply the familiar summary-judgment standard without recitation in detail. *See* Fed.R.Civ.P. 56(c)(2); *see also, e.g.*, *Davis v. City of Hartford*, 601 F. Supp.2d 488, 491 (D. Conn.2009) (reciting standard).

their protective sweep elsewhere only if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334. "Unlike most warrantless searches, which focus on the immediate danger posed by a suspect, a *Buie* protective sweep allows officers to stop a potential ambush by searching for unseen third parties." *United States v. Gandia*, 424 F.3d 255, 261–62 (2d Cir. 2005). In determining whether a protective sweep is lawful under the Fourth Amendment, the Second Circuit looks for articulable facts supporting a reasonable belief that there are other people in the premises and that those people pose a danger to police officers' safety. *See United States v. Moran Vargas*, 376 F.3d 112, 116 (2d Cir. 2004) (suppressing evidence discovered during a protective sweep that was unjustified because "[n]o facts specific to this case support a finding that the agents reasonably believed (1) that anyone other than Moran was present inside the motel room, or (2) that anyone so concealed posed a danger to their safety"). "Officers must point to facts that give rise to an individualized suspicion and cannot rely solely on generalizations." *Gandia*, 424 F.3d at 264.

The search of the first floor of the Vece home, potentially including the bedroom closet, was not a search of a "grab area," and must therefore be supported by articulable facts warranting a reasonable belief that individuals were in other rooms in the home and that those individuals posed some danger to the officers' safety. The original summary–judgment record contained no evidence of why Sergeant DeMaio believed there

6

to be a threat justifying a protective sweep, and at oral argument the Court granted leave for both parties to supplement the record as to the circumstances surrounding Defendant's sweep of the Vece home. In his supplemental affidavit, Sergeant DeMaio's only stated rationale for conducting the protective sweep was his observation that there were "several people on the back deck." Based on this observation, coupled with his "education, training, and experience," Officer DeMaio concluded that the officers' safety was at risk because they were in an unfamiliar confined setting, in the presence of unidentified third parties. The only record on the guests' behavior is Jonathan's averment that his friend Scott Titus, Titus's girlfriend, and Jonathan's girlfriend were smoking cigarettes on the back porch. Sergeant DeMaio points to nothing other than the presence and unidentified nature of the guests, coupled with his training and experience, to support his safety concern.

Unlike the respondents in *Buie*, who were arrested for armed robbery, Jonathan was subject to PRAWN warrants for failure to appear. Even the underlying charges against Jonathan for Improper Use of Marker, Illegal Operation of a Motor Vehicle Without Minimum Insurance, Issuing Bad Checks, and Larceny Third, Fourth, and Sixth Degree (*see* Vece Dep. at 15:25–16:6, 18:11–17, 19:11–19, 19:11–19, 21:14–21, 22:11–16), do not suggest violent conduct. Unlike the defendant in *United States v. Miller*, 430 F.3d 93, 101 (2d Cir. 2005), seeking suppression of evidence discovered during a protective sweep, who the police knew had made violent threats against his roommate, there is no evidence that implies either Jonathan or his guests were violent.

Although Sergeant DeMaio avers that his training and experience led him to believe that Jonathan's guests posed a threat necessitating a protective sweep, reasonable jurors

7

could conclude there to be an absence of specific threatening circumstances that would justify a protective sweep. A lack of information as to whether other individuals in the house posed a threat "cannot provide an articulable basis upon which to justify a protective sweep," as "'[n]o information' cannot be an articulable basis for a sweep that requires information to justify it in the first place." *Moran Vargas*, 376 F.3d at 117 (quoting *United States v. Colbert*, 76 F.3d 773, 777–78 (6th Cir. 1996) (officer's testimony that he "didn't have any information at all" when asked whether he had information that anyone was inside the criminal defendant's apartment who posed a security threat prior to conducting to a protective sweep could not justify the sweep)).

Defendant also argues that summary judgment should enter because he is entitled to qualified immunity, given that his search of the Vece home was objectively reasonable as a protective sweep. "A police officer is entitled to qualified immunity if (1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir.2008). "Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder." *Taravella v. Town of Walcott*, 599 F.3d 129, 135 (2d Cir. 2010) (internal quotations omitted). *See also Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) ("[A] defendant is entitled to summary judgment on qualified immunity grounds when no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[] to believe that he was acting in a fashion that did not

8

clearly violate an established federally protected right." (internal quotations omitted)). Because there remains a genuine dispute over whether circumstances under which Defendant searched the Vece home provided indicia of threats, Defendant is not entitled to qualified immunity on summary judgment.

III. Conclusion

For the reasons discussed above, Defendant's [Doc. # 24] Motion for Summary Judgment is GRANTED IN PART as to entrance into the Vece home and DENIED IN PART as to the protective sweep of the Vece home.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of August, 2010.